FILED IN CHAMBER
U.S.D.C. - Atlanta

MAR 2 9 2010

James N. Hatten, Clerk
By: a.m. Cauce
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RAYMOND COX,<br>BOP Reg. # 15494-074,<br>    Plaintiff,<br><br>v.<br><br>LOREN GRAYER, Warden, DARROL ACRES, LIEUTENANT HOWARD, J.E. STEWART, LIEUTENANT DANIELS, JOHN DOE No. One, JOHN DOE No. Two, R.O. LEWIS, KENNY EDWARDS, CHARLES BROWNING, HARLEY G. LAPPIN, KIM WOODRING, Chief, Office of Internal Affairs, U.S. Dept. of Justice, et al.,<br>    Defendants. | CIVIL ACTION NO.<br>1:08-CV-1622-ODE<br><br><br>PRISONER CIVIL RIGHTS<br>28 U.S.C. § 1331 (BIVENS) |

## ORDER AND OPINION

Now before the Court are Defendants' motions (1) For Dismissal or Alternatively for Summary Judgment [Doc. 101], with Corrected Memorandum of Law in Support [Doc. 103-2] and other supporting documents [Doc. 103-3 - 103-8]; (2) For an Order that Plaintiff Comply with Local Rules, and Request to Stay Deadlines [Doc. 111]; and to (3) Quash Discovery Requests [Doc. 125]; and Plaintiff Raymond Cox's motions (1) Under Rule 56(f) For Order Denying or Alternatively Continuing Defendants' Motion for Summary Judgment and Instead Enabling Discovery and Taking of Affidavits [Doc. 105]; (2) To Dismiss Motion for Summary Judgment [Doc. 107]; (3) For Sanctions and Costs [Doc. 114]; (4) For Order Directing Defendants to Answer His First Set of Interrogatories of August 2009 [Doc. 120]; (5) For Order Compelling Disclosure and Awarding Expenses [Doc. 124]; (6) For Leave to File Supplemental Evidence [Doc. 126]; and (7) For Summary Judgment [Doc. 128].

Plaintiff's pro se complaint as supplemented [Docs. 20, 59] asserts the following. In 2008 he sent a letter to Bureau of Prisons ("BOP") headquarters seeking a sentence reduction in exchange for his assistance in exposing illegal contraband activity at USP-Atlanta, where Plaintiff was an inmate. According to Plaintiff's complaint, the illegal contraband consisted of heroin, cocaine, cigarettes and stamps and was being distributed by inmates and staff. There is no copy of the letter in the record. Plaintiff asserts that the BOP improperly forwarded his letter to USP-Atlanta, where certain officials retaliated against him by (1) falsely implicating Cox himself in the contraband scheme, (2) placing him in the Special Housing Unit ("SHU"), an administrative detention unit, (3) depriving him of an administrative remedy form, and (4) searching his cell. He also claims that when he was being escorted back to the SHU from a recreation session, two unidentified guards attacked him in a stairwell, causing him to fall and receive injuries. One of the guards allegedly said he "would have a much worse accident that he might not live to talk about if he kept talking about staff" [Doc. 20, at 25]. Finally, Cox contends that certain medical treatment he received was "deliberately indifferent to his serious medical needs." Cox sues for damages under the authority of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which allows a cause of action to an individual deprived of constitutionally protected rights by an agent acting under color of federal authority. Cox does assert that the foregoing acts of Defendants (all of whom are prison employees or officials) violated his First, Fifth (due process) and Eighth Amendment rights.

In response to Plaintiff's complaint as supplemented, Defendants did not file an answer to the complaint but rather filed a motion captioned "Motion for Dismissal or Alternatively for Summary Judgment" [Doc. 101]. Defendants filed a memorandum of law and a number of declarations in support of their motion [Doc. 103].

Defendants' first argument is that Plaintiff's case must be dismissed because he failed to exhaust administrative remedies. Because the Court finds this argument meritorious, the complaint as supplemented will be dismissed without prejudice. It is unnecessary to address Defendants' other arguments.

In support of their argument Defendants offer the declaration of J. Latease Bailey, Assistant Regional Counsel for the Federal Bureau of Prisons, Southeastern Office, who states that a review of computerized records of inmate grievances shows that Cox's only grievance was filed in August 2004, more than three years before the incidents complained of [Doc. 103, Ex. 2]. Defendants also offer the declaration of SHU Unit Manager James Stewart [Doc. 103, Ex. 3], who states:

> [i]nitially, I did tell inmate Cox that he did not need administrative remedy forms because, at the time, I was told he was scheduled to be released from administrative detention in the Special Housing Unit (SHU). It was only later that I was told inmate Cox was not being released due to concerns for his safety as he provided the information on the contraband and the fact that other inmates may have known about him being the informant.

Also, "[c]ontrary to his assertion, after the first request, inmate Cox did not request administrative remedy forms from me again" [Doc. 103, Ex. 3 at 1]. Stewart also states "[i]nmate Cox did not request any administrative remedy forms subsequent to being told he

-3-

was being transferred" [Doc. 103, Ex. 3 at 1-2]. Plaintiff has not disputed this statement.

A Request for Transfer attached to Stewart's declaration is dated 5/14/2008 and contains Stewart's signature. The declaration states the transfer request was approved on June 26, 2008 and that Stewart informed Cox that he would expedite the transfer request.

Defendants' motion also attaches the declaration of Michael Howard, the Special Investigative Services Lieutenant at USP-Atlanta at the time of the events involved in this case [Doc. 103, Ex. 4]. His declaration essentially denies Cox's allegations of retaliation. It states that Cox was "placed in SHU, at least partially, to keep other inmates from knowing who tipped off staff to the contraband." It also states,

> Generally, inmates involved in an investigation are kept in SHU pending the conclusion of the investigation, which does not have a definite time period. Once the investigation involving Plaintiff was concluded, I recommended that he not be returned to general population at USP Atlanta because I thought he was involved in selling/smoking the contraband (cigarettes). I believe he had a disagreement with the other inmates involved and decided to provide information on their illegal activity. Thus, I did not believe inmate Cox was innocent.

[Doc. 103, Ex. 4 at 2.] Howard's affidavit also attaches portions of an investigative report which was prepared for the Warden by him, dated April 16, 2008 regarding the contraband scheme. The report, which is heavily redacted, concludes that Cox was involved with others (names redacted) in the scheme but he did elect to provide information on the illegal activity of the others. The report recommends that Cox be kept in the SHU until his transfer to another prison. Finally, Defendants offer the declaration of Stanley Daniel, who states he served Cox with an administrative detention

-4-

order on March 27, 2008 which said he was being placed in administrative detention because of being under investigation for possession of cigarettes [Doc. 103, Ex. 5].

In response to Defendants' motion to dismiss or alternatively for summary judgment Plaintiff filed a motion entitled "Plaintiff's Motion Under Rule 56(f) for Order Denying or Alternatively Continuing Defendants' Motion for Summary Judgment and Instead Enabling Discovery and Taking of Affidavits" and a memorandum of law in support thereof [Doc. 105]. The motion and memorandum argue in part that "a remedy that prison officials prevent a prisoner from utilizing is not an available remedy under Section 1997(e) [a part of the Prison Litigation Reform Act] (quoting Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002), citing to Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001))" [Doc. 105-2, at 3]. Plaintiff states he was placed in the SHU on March 27, 2008, and that he asked Stewart for a grievance form on April 8, 2008. He states that in the following week, he again requested a grievance form but Stewart refused. He argues that "where Stewart refused Plaintiff's request for grievance forms through mid-April, beyond the limitations period for filing any formal grievance arising from the March 27 conduct, filing on that misconduct would be 'futile' as time barred" (citing the twenty day time limit of 28 C.F.R. § 542.14(a)) [Doc. 105-3, n.3]. He argues in effect that the combined refusal of Stewart to give him a grievance form plus the assault and threat of the unidentified prison guards were sufficient to render administrative remedies "unavailable" between April 8 and August 13, 2008, the latter date being the date of Cox's transfer from USP-Atlanta.

-5-

Cox also filed Plaintiff's Response and Objections to Defendants' Statement of Material Facts as to Which There Is No Genuine Issue to be Tried and Motion to Dismiss Motion for Summary Judgment [Docs. 106, 107]. In addition to essentially repeating the arguments made in his memorandum of law, Plaintiff points to the declaration of Steven Tomershea, which was filed as an attachment to Plaintiff's Emergency Motion for Preliminary Injunction Temporary Restraining Order [Doc. 3]. In that declaration, Tomershea, Cox's cell mate in the SHU, states he witnessed Cox asking Stewart for a sensitive grievance form and heard Stewart say he would not give him the form because Cox was going to be released anyway. Tomershea says this took place on April 8, 2008. Tomershea also states "[t]he following week I witnessed Mr. Cox ask Warden Grayer to order that he receives [sic] a B.P. 10. To this Assisting [sic] Warden Vasquez ordered Mr. Stewart to comply with Mr. Cox's request. To this date April 24, 2008 no such form has been issued" [Doc. 3, Tomershea declaration]. Tomershea also states that on April 23, 2008 he observed abrasions on Cox when he returned from recreation.

Plaintiff also filed two declarations of his own in response to Defendants' motion [Docs. 108, 109]. These declarations do not address the timing of Cox's requests for grievance forms, or the question whether any conduct on Defendants' part legitimately deterred Cox from filing a grievance.

**UNDISPUTED FACTS**

The following facts are undisputed unless noted otherwise. Plaintiff claims he sent a letter to BOP headquarters on February 13, 2008 regarding illicit contraband distribution at USP-Atlanta by staff and inmates. The alleged contraband was heroin,

-6-

cocaine, stamps and cigarettes. The complaint states that the letter ". . . vaguely described the criminal activities . . . and offered to assist in the prosecution of the staff and inmates involved in exchange for a sentence reduction motion by the BOP" [Doc. 20, at 11].[1] BOP headquarters allegedly forwarded the letter to USP-Atlanta despite its request that it be treated as confidential [Doc. 20, at 6].[2] In March 2008 officials at USP-Atlanta conducted an investigation which may have been triggered by Plaintiff's letter. In the absence of Defendants' denial the Court will assume that it was. Defendant Acres, a supervisor in USP-Atlanta's investigative service, questioned Plaintiff about his claims and told him to "keep his mouth shut" [Doc. 20, at 12-13]. The complaint states that subsequently Plaintiff wrote a detailed letter to Defendant Acres in which he offered to tell Acres where the "contraband, drugs and money were stored" [Doc. 20, at 14-15] and gave it to Defendant Lewis, a supervisor in the prison's UNICOR factory, for delivery. Plaintiff apparently showed the letter to Lewis [Doc. 20, at 15] and also discussed the contraband matter with Defendant Browning, another supervisor in the UNICOR factory [Doc. 20, at 15-16].

---

[1] Plaintiff states he previously had sent another letter to Melaine Williams, Assistant U.S. Attorney, offering to assist in the prosecution of staff and inmates involved in credit card fraud, attempted blackmail, racketeering, gambling and loan sharking. The complaint states she never replied [Doc. 20, at 9-10].

[2] Plaintiff's complaint is "[e]xecuted under penalty of perjury pursuant to 28 U.S.C. § 1746" [Doc. 20, at 50].

-7-

On March 24, 2008 numerous cartons of cigarettes were found under a false bottom in a locker. On March 27, 2008 Plaintiff and other inmates were interviewed separately. Plaintiff related to Defendant Howard, head investigative officer at USP-Atlanta, a "condensed form" of the facts pertaining to the contraband distribution [Complaint, Doc. 20, at 19]. On March 27, 2008 Plaintiff and other inmates were given administrative detention orders stating they were being placed in administrative detention because they were under investigation for "possession of cigarettes" [Doc. 20, at 20]. Howard told Plaintiff he was being put in the SHU so as "not to give the appearance that he told on anyone" [Doc. 20, at 20]. The foregoing allegations are accepted as undisputed for purposes of this order.

On or about April 8, 2008 Plaintiff asked J.E. Stewart, Unit Manager of the SHU, for a "sensitive" administrative remedy (grievance) form [Doc. 3, Tomershea declaration]. This form would allow Cox to present a grievance to the Regional Director's office rather than to an official within USP-Atlanta. Stewart told Plaintiff that he did not need the form because he would soon be getting out of the SHU. The complaint says that Stewart said, "Oh, you're coming out Cox. You're good, don't worry about it" [Doc. 20, at 21]. A factual dispute exists as to whether Plaintiff again asked Stewart for, but did not receive, a grievance form, on or about April 15, 2008. The Court will assume for purposes of ruling on the instant motion that he did ask for and was refused the grievance form on or about April 15, 2008.

On or about April 16, 2008 the investigation into the contraband matter concluded with a written report signed by

-8-

Defendant Howard finding that Plaintiff and others had been involved in smuggling in and distributing cigarettes in the prison. Plaintiff disputes that he was involved. The report did credit Plaintiff with reporting the contraband scheme. It did not recommend that Plaintiff (unlike others) be "written up" in an incident report but it did recommend that he be held in the SHU pending his transfer to another prison.

Plaintiff's verified complaint states he was attacked by unidentified guards in a stairwell on April 23, 2008, causing him to fall and injure his shoulder, collarbone, right forearm and left knee [Doc. 20, at 24-25].[3] One of the guards warned Cox not to say anything else about "staff" or he could have a much worse accident which might kill him [Doc. 20, at 25]. Defendants have offered no evidence in opposition to this claim. The Court will assume, for purposes of ruling on this motion, that Plaintiff's account is correct.

Unit Manager Stewart states in his declaration that Cox never told him about the April 23 attack by the guards. Plaintiff Cox has not disputed this. Therefore, the Court accepts Stewart's statement as true. Stewart told Plaintiff on April 24, 2008 he was not going to be released from the SHU pending his transfer to another prison [Doc. 3, at 3]. On May 14, 2008 Stewart signed a request to transfer Cox to another prison.

---

[3] In a declaration filed May 5, 2008 Cox stated that the guard said ". . . if I opened my mouth to say anything else about anybody working here, or told anybody about what just happened, that I would have a much worse accident that I might not live to talk about" [Doc. 3-2, ¶ 8].

-9-

On April 21, 2008 Cox signed Plaintiff's Motion for Preliminary Injunction Temporary Restraining Order in the instant case. It was filed on May 1, 2008 [Doc. 1]. He did not file a complaint at that time. The motion sought Plaintiff's immediate release into general population, a civil complaint form, ink pens and paper, access to a law library, return of Plaintiff's notes and documents and an order directing Defendants to cease and desist from obstructing Plaintiff's ability to communicate with relatives, government officials, the courts and the media. Another motion for injunctive relief was signed April 24, 2008. It was filed on May 5, 2008 [Doc. 3]. This motion described the April 23, 2008 attack and sought Cox's and Tomershea's transfer to another prison along with Cox's legal papers and other property.

On May 29, 2008, Plaintiff filed a new lawsuit (1:08-CV-01890-ODE) against the same defendants as in the instant case. In a Motion to Merge filed June 11, 2008 [Doc. 13], Plaintiff asked that the case be consolidated within this case and that the two motions for injunctive relief [Docs. 1, 3] be dismissed. The Motion to Merge was granted by order entered July 7, 2008 [Doc. 19]. The July 7 order directed that the complaint for 01890 be filed in this case as the "First Amended Complaint." This was done on July 7, 2008 [Doc. 20]. The "First Amended Complaint" is entitled "Civil Rights Complaint and Jury Demand." It is actually the original complaint in this case, even though the motion for preliminary injunction is denominated a "Complaint" on the docket [Doc. 1].

Prior to the case consolidation Plaintiff had also filed a motion to amend the complaint (the proposed supplemental complaint was attached) in case 01890 on June 16, 2008. After consolidation

-10-

of the two cases, the motion was granted in the instant case [Doc. 59] on September 22, 2008. Therefore the complaint in the instant case consists of the original complaint [Doc. 20] plus the supplemental complaint [Doc. 59].

Stewart's request to transfer Cox was granted on June 26, 2008. On August 13, 2008 Plaintiff was transferred out of USP-Atlanta. He arrived at FCI-Pekin in Illinois on August 20, 2008.

It is undisputed that between approximately late April 2008 and August 13, 2008 Plaintiff did not ask for an administrative remedy form. He remained in the SHU at USP-Atlanta throughout this time. He has never filed a grievance concerning any of the matters complained of in this case, either while he was incarcerated at USP-Atlanta or at FCI-Pekin.

Defendant Woodring was never served with process. On September 4, 2008 a notice of appearance was filed by counsel on behalf of all Defendants; however, a Motion for Extension of Time to File Answer, filed September 8, explained that not all Defendants had been served [Doc. 55], and that service was not being waived. Therefore, Woodring retained his/her right to insist upon personal service. As requested in Defendants' motion to dismiss [Doc. 103], all claims against Defendant Woodring in his/her personal capacity are DISMISSED WITHOUT PREJUDICE.

**Applicable Legal Standard**

Defendants have moved alternatively under Rules 12(b)(6) and 56, Federal Rules of Civil Procedure. Because both sides have submitted evidence outside the pleadings, the Court elects to proceed under Rule 56, with some modification as is discussed below. Summary judgment is proper on an issue if the pleadings and other

-11-

documents on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment on an issue as a matter of law. Fed. R. Civ. P. 56(c), (d). A motion for summary judgment may be supported or opposed with pleadings, discovery materials, admissions, and affidavits.[4] Fed. R. Civ. P. 56(c)(2).

## Legal Discussion

The BOP has established the following administrative remedy procedure: "[a]n inmate has not fully exhausted . . . until he has appealed through all three levels" of the formal remedy process. Irwin v. Hawk, 40 F.3d 347, 349 n.2 (11th Cir. 1994) (discussing 28 C.F.R. §§ 542.10-.15). First, an inmate must attempt "informal resolution." 28 C.F.R. § 542.13(a). If that fails, an inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)" within "20 calendar days following the date on which the basis for the Request occurred." Id. § 542.14(a). However, "[w]here the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame." Id.

---

[4] An affidavit shall "be made on personal knowledge, set out such facts that would be admissible in evidence," and may be supported by "sworn or certified cop[ies]" of documents referred to in the affidavit. Fed. R. Civ. P. 56(e). In addition, an "unsworn declaration, certificate, verification, or statement" may be used in the place of a sworn affidavit to support or oppose a motion for summary judgment if the declaration "is subscribed by [the declarant], as true under penalty of perjury, and dated." See 28 U.S.C. § 1746. Both sides have employed declarations made under penalty of perjury in this case.

-12-

§ 542.14(b). Moreover, "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark 'Sensitive' upon the Request and explain, in writing, the reason for not submitting the Request at the institution." Id. § 542.14(d)(1). An inmate "who is not satisfied with the Warden's response" to his formal BP-9 remedy request "may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director." Id. § 542.15(a). Finally, an inmate "who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel." Id.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' This provision eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005)(quoting Porter v. Nussle, 534 U.S. 516, 532 (2002), and Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)). See Booth, 532 U.S. at 735 (affirming dismissal of prisoner lawsuit for failure to exhaust administrative

-13-

remedies and finding that Third Circuit properly rejected prisoner's "argument that the statutory exhaustion requirement is inapposite to his case simply because the [State's] administrative process could not award him the monetary relief he sought (money then being the only relief still requested, since [prisoner's] transfer to another institution had mooted his claims for injunctive orders)"). Furthermore, there is no futility exception to this exhaustion requirement. See Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998) (stating that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA," and "there is no longer discretion to waive the exhaustion requirement").

When, however, prison officials have "in some way made administrative exhaustion 'unavailable'" to a prisoner, complete exhaustion is not required. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008); Prickett v. Lawson, No. 607CV041, 2008 WL 5046063, at *3 (S.D. Ga. Nov. 24, 2008). See also Bryant v. Rich, 530 F.3d 1368, 1379 & n.19 (11th Cir. 2008) (affirming dismissal without prejudice, for lack of administrative exhaustion, of claims brought by prisoner who alleged "he feared . . violent reprisals" if he filed grievance at prison at which his rights allegedly were violated, but who also failed to file "out-of-time grievance and then show[] good cause for its untimeliness" at prison to which he later was transferred, even though he could "point[] to no evidence in the record that he was threatened with retaliation for filing a grievance at the new prison"). See also 28 C.F.R. § 542.14(b) (allowing for filing out-of-time BP-9 form if "inmate demonstrates a valid reason for delay").

-14-

Failure to exhaust administrative remedies is an affirmative defense; Defendants have the burden of proof. Jones v. Bock, 549 U.S. 199 (2007). Defendants have proven that Plaintiff has not exhausted administrative remedies. No grievance was filed. The next question is whether Plaintiff's failure should be excused. The Court places the burden on Plaintiff to articulate the reason he did not file a grievance and to present facts which back up his argument.

Plaintiff has not expressly stated in response to Defendants' motion for summary judgment that he did not ask for a grievance form after mid-April 2008 because he believed he could not get one or that he did not file a grievance because he was afraid to file a grievance. Plaintiff's declarations in response to Defendants' motion for summary judgment should have addressed this issue. Plaintiff's initial complaint [Doc. 20] and his supplemental complaint [Doc. 59] were executed under penalty of perjury. Therefore, the Court also will look to those pleadings to determine whether either of them addresses the question whether Plaintiff's failure to file any administrative grievances should be excused. The initial complaint [Doc. 20 filed May 29, 2008] only states that no administrative grievance was filed because Cox's efforts to obtain a form were thwarted by Defendant Stewart [Doc. 20, at 46-47]. The supplement to the complaint [Doc. 59 filed June 16, 2008] does not state why Plaintiff failed to file a grievance with respect to the claims made in it; it merely asserts that exhaustion is not required because only damages are sought.

Plaintiff has articulated that he should be excused from failing to file a grievance as to the claims in the original

-15-

complaint[5] because of Defendant Stewart's refusal to give him a form on April 8 and April 15, 2008. However, the evidence does not support Plaintiff's implicit argument that this should excuse his failure to file a grievance after that. Around April 8-15, Stewart told Cox he would not give him a grievance form because he would soon be released from the SHU.[6] But on April 24, Stewart told Cox that he would be kept in the SHU pending his transfer to another prison. At that point Cox's reasonable course of action would have been to ask Stewart again for a grievance form. Cox has not addressed why he did not again seek an administrative remedy form between April 24 and August 13, 2008 - almost four months. Cox also has not carried his burden of proving that the forms were unavailable while he was at USP-Atlanta in the SHU between late April 2008 and August 13, 2008. He has also not shown that forms are unavailable at FCI-Pekin.

Although Plaintiff's allegations against the two unidentified guards who allegedly attacked him on April 23, 2008 are very troubling, the Court declines to read into Plaintiff's filings a blanket claim that he decided against filing grievances concerning

---

[5]Cox has not articulated that he could not obtain a grievance form before filing the claims in the supplemental complaint, which was filed as an attachment to a motion to amend the complaint on June 16, 2008. The additional claims are based on occurrences between May 20, 2008 and June 16, 2008. He has also supplied no evidence that remedy forms were unavailable to him then.

[6]The Court does agree with Cox that Stewart's response was improper, even though he may have sincerely believed that Cox was about to get out of the SHU. It was not Stewart's prerogative to decide whether Cox needed a grievance form.

-16-

all of the claims in this lawsuit because he feared Defendants would retaliate against him. Even though Plaintiff is acting pro se, he must clearly articulate his reason(s) for not filing a grievance to carry his burden. This is not too much to ask of a pro se litigant. While it may be obvious that the alleged threats by the guards would give a reasonable person pause before filing a grievance against the guards, it is not obvious that the alleged threats would deter a person of reasonable firmness from grieving the claims against the other Defendants which are made in the complaint and also in the supplemental complaint. Plaintiff has not made a discrete claim that fear of retaliation deterred him from filing grievances concerning (1) being arbitrarily found guilty in the contraband scheme, (2) his placement in the SHU, (3) being deprived of an administrative remedy form, (4) the search of his cell, and (5) being deprived of adequate medical care. The Court declines to read these allegations into Plaintiff's presentation.

Moreover, Plaintiff has not shown any facts which suggest that he had an objectively reasonable fear of retaliation if he filed a grievance as to claims (1) through (5). While Plaintiff's complaint names numerous inmates who allegedly were involved in the drugs/cigarettes scheme, he did not allege that any of the Defendants were involved. His complaint liberally alleges that various of the Defendants are "corrupt," but it fails to identify any allegedly corrupt act of which Plaintiff claims personal knowledge. This is Plaintiff's burden which he has failed to carry.

Further, the Court notes inconsistency between a claim that Plaintiff feared that filing a grievance against Defendants would trigger retaliation, when Plaintiff filed this lawsuit on May 29,

-17-

2008 – two months after the date he was put in the SHU. Obviously, Plaintiff intentionally elected to file this lawsuit in lieu of filing a grievance. But Plaintiff was aware that the named Defendants would have to be served with process. Therefore, the Defendants would know about his claims.

Plaintiff suggests that Defendant Grayer (Warden at USP-Atlanta) and perhaps other defendants were embarrassed by the revelations in his February 13, 2008 letter to BOP in which he stated that heroin, cocaine, stamps and cigarettes were being distributed at USP-Atlanta by staff and inmates. Plaintiff may be suggesting that for this reason they would have retaliated against him if he had filed grievances complaining of (1) through (5) above. However, a disinterested, objective observer would take into account that claims of the type described in (1) through (5) are commonplace in prison life. Management in a large prison such as USP-Atlanta is accustomed to handling grievances of these types on a frequent basis. The Court finds it is not objectively reasonable to think that all Defendants would have likely retaliated against Plaintiff if he had filed a grievance as to these matters. Moreover, the availability of the sensitive grievance procedure defeats Plaintiff's argument.

The question whether Plaintiff had an objectively reasonable fear of retaliation from the guards who allegedly attacked him is different. Based on the facts Plaintiff has presented, it is obvious that he would reasonably fear retaliation if the guards found out he had filed a grievance about their attack on him. However, Plaintiff's complaint shows he was aware of the availability of the "sensitive" grievance option in which his

-18-

grievance would be sent to BOP's Regional Director, not to anyone inside USP-Atlanta. This Court is unwilling to assume that the Regional Director's office would be incapable of investigating the claimed attack without protecting Plaintiff's safety. For this reason, the Court finds that Plaintiff did not have an objectively reasonable fear of filing a grievance against Defendants John Doe One and Two.

In summary, Plaintiff has failed to prove that administrative remedy forms were unavailable between late April 2008 to August 13, 2008 while he was at USP-Atlanta. He has not proven that they were unavailable after he was transferred to FCI-Pekin. Plaintiff has failed to articulate or present evidence that he had a reasonable fear of retaliation which excused him from failing to file a grievance as to all of the claims in this case except the assault claim against the guards. The "sensitive" grievance option would have protected Plaintiff from retaliation from the guards. Therefore, to the extent that Defendants' motion for summary judgment addresses Plaintiff's failure to exhaust administrative remedies it is GRANTED. Because it is unnecessary to reach Defendants' remaining arguments, the motion is otherwise DISMISSED AS MOOT.

Normally, granting defendant's motion for summary judgment resolves the case on the merits and thus results in dismissal with prejudice. In this case the Court has considered evidence outside the pleadings and thus has treated Defendants' motion as a motion for summary judgment. Nonetheless, because failure to exhaust administrative remedies constitutes a matter in abatement and is not dispositive of the merits, Turner v. Burnside, 541 F.3d at 1082

-19-

(11th Cir. 2008), Plaintiff's claims against all Defendants are DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

**Conclusion**

For the foregoing reasons, Defendants' Motion for Dismissal or Alternatively for Summary Judgment [Doc. 101] is **GRANTED IN PART** and **DISMISSED IN PART AS MOOT**, and this civil action is **DISMISSED WITHOUT PREJUDICE**, in its entirety, due to Cox's failure to exhaust the administrative remedies that were available to him.

All of the remaining motions – Cox's Motion Under Rule 56(f) for Order Denying or Alternatively Continuing Defendant's Motion for Summary Judgment and Instead Enabling Discovery and Taking of Affidavits [Doc. 105], Motion to Dismiss Motion for Summary Judgment [Doc. 107], Motion for Sanctions and Costs [Doc. 114], Motion for Order Directing Defendants to Answer His First Set of Interrogatories of August 2009 [Doc. 120], Motion for Order Compelling Disclosure and Awarding Expenses [Doc. 124], Motion for Leave to File Supplemental Evidence [Doc. 126] and Motion for Summary Judgment [Doc. 128], and Defendants' Motion for an Order that Plaintiff Comply with Local Rules and Request to Stay Deadlines [Doc. 111] and Motion to Quash Discovery Requests [Doc. 125] – are **DISMISSED AS MOOT**.

SO ORDERED, this 29 day of March, 2010.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE